## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JACQUELYN BRENEA N'JAI,<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION, *et al.*,<br><br>*Defendants*. | No. 19-cv-2712 (DLF) |

## <u>MEMORANDUM OPINION</u>

Jacquelyn N'Jai brings this action against the Department of Education ("the Department"), the Secretary of Education ("the Secretary"), Long Island University, New York University, Immediate Credit Recovery, Inc., New York State Higher Education Services Corporation ("New York Higher Education Services"), Campus Products and Services ("Campus Products"), and Conduent Education Services.[1]  Before the Court is Long Island University and New York University's Motion to Dismiss, Dkt. 56, Immediate Credit Recovery's Motion to Dismiss, Dkt. 60, the Department's Motion to Dismiss, Dkt. 70, and New York Higher

---

[1] N'Jai lists these parties as the named defendants in the caption of her amended complaint.  *See* Am. Compl. at 1, Dkt. 24.  In portions of her amended complaint, N'Jai appears to suggest that "Van Ru Credit Corporation" and "FMS Investment Corporation" are also defendants in this action, *id.* at 2, but she provides almost no allegations regarding these entities, *see generally* Am. Compl.  Regardless, "it is established that to make someone a party defendant in a case, a plaintiff must specify that person or entity in the caption of the case."  *Byrne v. Clinton Found.*, No. 18-cv-1422, 2019 WL 1330637, at *1 n.1 (D.D.C. Mar. 25, 2019); *see also* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties . . . .").  Because N'Jai is proceeding pro se, and as explained *infra* Part III.D, the Court will give N'Jai the opportunity to clarify whether she intends to name these entities as defendants in this action, *see Byrne*, 2019 WL 1330637, at *2.

Education Services's Motion to Dismiss, Dkt. 92.  For the reasons that follow, the Court will grant the motions.

## I.  BACKGROUND[2]

N'Jai attended Long Island University from 1986 to 1988, and New York University from 1988 to 1989.  Am. Compl. ¶ 1.  In order to finance her education, she took out two loans—one for $2,500 and one for $3,000—that she asserts she has paid in full.  *See id.* ¶¶ 1–2.  N'Jai alleges that various parties conspired to fraudulently take out additional student loans in her name.  Specifically, she alleges that, in 1993, Gregory Kaplan, an analyst for Chase Bank, falsely certified several new student loans, *id.* ¶¶ 4, 165, and then "both NYU and LIU signed her name on loan applications" "without her consent []or knowledge," *id.* ¶ 33, and conspired with the Department of Education, Chase Bank, and New York Higher Education Services to steal her identity, *id.* ¶ 36.

N'Jai has fought these allegedly fraudulent loans by appealing to the Department in writing and applying for a discharge of the debt, *see id.* ¶ 29, but to no avail, as the Department continues to assert that these loans are valid, *id.* ¶¶ 27–28.  The Department has allegedly enlisted Immediate Credit Recovery, Campus Products, and Conduent Education Services to help collect the debt, *see id.* ¶¶ 21, 28.  N'Jai asserts that this has led to the garnishment of her tax refund as well as her social security checks.  *See id.* at 4.

---

[2] Generally, when deciding a Rule 12(b)(6) motion, the court may consider only the complaint itself, documents attached to the complaint, documents incorporated by reference in the complaint, and judicially noticeable materials.  *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).  But when a plaintiff proceeds pro se, the Court must consider the complaint "in light of all filings, including filings responsive to a motion to dismiss." *Johnson v. District of Columbia*, 927 F.3d 539, 541 (D.C. Cir. 2019) (internal quotation marks omitted).

N'Jai filed this action on September 9, 2019.  *See* Am. Compl.  Although it is difficult to determine the precise nature of N'Jai's claims, her 79-page complaint enumerates eight counts that purport to assert causes of action against some or all of the defendants pursuant to the following statutes or regulations: (1) the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, Am. Compl. at 17–21; (2) 18 U.S.C. § 1028, Am. Compl. at 23–28; (3) the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, and the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, Am. Compl. at 28–35; (4) 42 U.S.C. § 1983 and 18 U.S.C. §§ 242, 245, Am. Compl. at 35–44; (5) 34 C.F.R. § 685.206, Am. Compl. at 44–52; (6) the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, Am. Compl. at 53–59; (7) the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346, Am. Compl. at 59–63; and (8) the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.*, Am. Compl. at 63–80.  N'Jai seeks, among other things, an emergency injunction: (1) declaring that all of her debts have been paid; (2) voiding any other outstanding debts based on fraud; and (3) estopping any future collection attempts.  Am. Compl. at 80–81. The Department and several defendants, Long Island University, New York University, Immediate Credit Recovery, and New York Higher Education Services, have moved to dismiss N'Jai's amended complaint on various grounds.  *See* Dkts. 70, 56, 60, and 92.  All four motions are now ripe for review.

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss an action for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  Federal law empowers federal district courts to hear only certain kinds of cases, and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins.*, 511 U.S. 375, 377

(1994).  When deciding a Rule 12(b)(1) motion, the court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged, and upon such facts determine [the] jurisdictional questions."  *Am. Nat'l Ins. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks omitted).  But the court "may undertake an independent investigation" that examines "facts developed in the record beyond the complaint" in order to "assure itself of its own subject matter jurisdiction."  *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005) (internal quotation marks omitted).  A court that lacks jurisdiction must dismiss the action.  Fed. R. Civ. P. 12(b)(1), 12(h)(3).

### B.      Rule 12(b)(2)

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a party may move to dismiss an action when the court lacks personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).  "On such a motion, the plaintiff bears the burden of 'establishing a factual basis for the exercise of personal jurisdiction' over each defendant."  *Triple Up Ltd. v. Youku Tudou Inc.*, 235 F. Supp. 3d 15, 20–21 (D.D.C. 2017) (quoting *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990)).  To meet this burden, a plaintiff cannot rely on conclusory allegations, *id.*, but rather must allege specific facts connecting the defendant with the forum, *see Shibeshi v. United States*, 932 F. Supp. 2d 1, 2–3 (D.D.C. 2013) (internal quotation marks omitted) (citing *Second Amendment Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001)).

When ruling on a 12(b)(2) motion, the court "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts."  *Triple Up Ltd.*, 235 F. Supp. 3d at 20 (internal quotation marks omitted).  "Ultimately, the [c]ourt must satisfy itself that it has jurisdiction to hear the suit."  *Id.* at 20–21 (internal quotation marks omitted).

### C.     Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss the complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  A complaint need not contain "detailed factual allegations," but alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility."  *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted).  "A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks omitted).  However, "the Supreme Court has made clear that . . . there is no requirement 'that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.'"  *Jean-*

*Pierre v. Fed. Bureau of Prisons*, 880 F. Supp. 2d 95, 100 (D.D.C. 2012) (quoting *McNeil v. United States*, 508 U.S. 106, 113 (1993)).

Although a pro se complaint is generally entitled to liberal construction, *see Washington v. Geren*, 675 F. Supp. 2d 26, 31 (D.D.C. 2009), the assumption of truth does not apply to a "legal conclusion couched as a factual allegation," *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  An "unadorned, the defendant-unlawfully-harmed-me accusation" is not credited; likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

## III.   ANALYSIS

### A.   Eleventh Amendment Immunity

As an initial matter, New York Higher Education Services asserts that, as an agency of the State of New York, it is immune from suit.  The Court agrees.  A state is immune from federal suits brought by the state's own citizens or the citizens of another state unless the state waives its sovereign immunity or Congress abrogates that immunity.  *See Jones v. WMATA*, 205 F.3d 428, 431–32 (D.C. Cir. 2000).

New York Higher Education Services is an educational corporation that was created within the State of New York's Education Department.  *See* N.Y. Educ. Law § 652(1).  It is charged with administering the state's financial aid and loan programs and assisting the federal government with its administration of federal student aid programs, *id.* § 652(2), and it is supported by the New York State Treasury, *see id.* § 654(3); *see also Bulson v. Control Data Corp.*, 563 N.Y.S.2d 249, 250 (N.Y. App. Div. 1990) ( "[A]ny award made [against New York Higher Education Services] as a result of this or any other claim would come out of the State's treasury.").

Courts have therefore consistently concluded that, as a state agency, New York Higher Education Services is entitled to sovereign immunity under the Eleventh Amendment.[3]  *Harper v. N.Y. State Higher Educ. Servs. Corp.*, No. 97-cv-9167, 1998 WL 453688, at *1 (2d Cir. 1998); *see also, e.g.*, *Kozaczek v. N.Y. Higher Educ. Servs. Corp.*, No. 10-cv-107, 2011 WL 3687379, at *4 (D. Vt. Aug. 23, 2011) (dismissing all claims against New York Higher Education Services on Eleventh Amendment grounds), *aff'd*, 503 F. App'x 60 (2d Cir. 2012).  Indeed, in a previous case filed by N'Jai, *N'Jai v. N.Y. State Higher Education Services Corp.*, 214 F.R.D. 251 (E.D.N.Y. 2003), the court "sua sponte dismissed the action against [New York Higher Education Services] for lack of subject matter jurisdiction on the ground that [New York Higher Education Services] was entitled to absolute immunity under the Eleventh Amendment," *id.* at 251.  "Because the Eleventh Amendment provides [New York Higher Education Services] with immunity from orders issued by a federal court," the Court will dismiss N'Jai's claims against New York Higher Education Services pursuant to Rule 12(b)(1).  *Kozaczek*, 2011 WL 3687379, at *4.

### B.    Personal Jurisdiction

Long Island University, New York University, and Immediate Credit Recovery each contend that this Court lacks personal jurisdiction over them.  *See* Dkt. 56-9 at 3–14; Dkt. 61 at 6–15.  "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."  *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014).  And this Court "may

---

[3] In her opposition, N'Jai contends that, in an adversary proceeding brought by a Chapter 7 debtor, a bankruptcy court denied New York Higher Education Services's motion to dismiss on sovereign immunity grounds. *Muir v. Sallie Mae Servicing Corp. (In re Muir)*, 239 B.R. 213, 215–17 (Bankr. D. Mont. 1999).  But that court denied New York Higher Education Services's motion because the parties had not addressed the Ninth Circuit's factors for evaluating whether an entity qualified as an "arm of the state" and the record in the case was "inadequate to undertake a full evaluation" of those factors absent further briefing.  *See id.* at 217.

exercise one of two types of personal jurisdiction: (1) 'general or all-purpose jurisdiction' or (2) 'specific or case-linked jurisdiction.'" *Lewis v. Full Sail, LLC*, 266 F. Supp. 3d 320, 323 (D.D.C. 2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

1.    *General Jurisdiction*

"A court with general jurisdiction may hear *any* claim against that defendant." *Bristol–Myers Squibb Co. v. Superior Court of Calif., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017). "But only a limited set of affiliations with a forum will render a defendant amenable to general jurisdiction in that State." *Id.* (internal quotations marks omitted). "Exercise of this so-called 'general jurisdiction' requires that the defendant's contacts within the forum be 'continuous and systematic' in order for the defendant to be forced to defend a suit arising out of any subject matter unrelated to the defendant's activities within the forum." *Conant v. Wells Fargo Bank, N.A.*, 24 F. Supp. 3d 1, 12 (D.D.C. 2014) (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 415–416 (1984)). For a corporation, the "place of incorporation and principal place of business are [the] paradigm bases for general jurisdiction." *Daimler*, 571 U.S. at 137 (internal quotation marks and alterations omitted). D.C. law provides for general jurisdiction "over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in" the District. D.C. Code § 13–422.

N'Jai has not met her burden of showing that the Court may exercise general jurisdiction over Immediate Credit Recovery, Long Island University, or New York University.[4]  Immediate

---

[4] N'Jai does not allege that Long Island University, New York University, or Immediate Credit Recovery maintain their principal place of business in Washington, D.C., and concedes that none of these defendants are "organized in DC," *see* Pl.'s Br. in Opp'n to Long Island University, New York University, and Immediate Credit Recovery's Motions to Dismiss ("Pl.'s Br. in Opp'n to Defs.' Mots.") at 8, Dkt. 64. Even so, N'Jai contends that this Court has general jurisdiction over these defendants because this lawsuit involves claims that arise under federal law and

Credit Recovery attests that is a New York corporation headquartered in Poughkeepsie, New York that maintains no office locations in the District of Columbia.  Decl. of Lawrence Rathbun ("Rathbun Decl.") ¶¶ 6–8, Dkt. 61-1.  And both Long Island University and New York University attest that they are private universities that are chartered and maintain their principal place of business in New York.  Decl. of Christopher Fevola ("Fevola Decl.") ¶¶ 3–4, Dkt. 56-1; Fevola Decl. Ex. A, Dkt. 56-2 (Long Island University Charter); Decl. of Albert Gentile ("Gentile Decl.") ¶¶ 3–4, Dkt. 56-5; Gentile Decl. Ex. A, Dkt. 56-6 (New York University Amendment of Charter).  The fact that New York University maintains a satellite campus in the District of Columbia, *see* Pl.'s Opp'n to Defs.' Mots. at 7, 31 n.5, does not constitute an affiliation with the District that is "so continuous and systematic as to render [New York University] essentially *at home*" there.  *Daimler*, 571 U.S. at 138–39 (emphasis added); *see also id.* at 123, 136–37 (having multiple facilities, including a regional office in the forum state, was insufficient to establish general jurisdiction); *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017) (holding that railroad company's "2,000 miles of railroad track and more than 2,000 employees" in the forum state was not enough to "permit the assertion of general jurisdiction").  Consequently, general jurisdiction cannot be asserted over New York University, Long Island University, or Immediate Credit Recovery.  *See Canuto v. Mattis*, 273 F. Supp. 3d 127, 139 (D.D.C. 2017), *aff'd*, 2020 WL 7351253, at *1 (D.C. Cir. Jan. 30, 2020); *Xie v. Sklover & Co., LLC*, 260 F. Supp. 3d 30, 39 (D.D.C. 2017).

---

because there is complete diversity between the parties.  *See id.* at 5–6.  But these arguments relate to the issue of subject-matter jurisdiction rather than personal jurisdiction.  *See* 28 U.S.C. §§ 1332–33.

2. *Specific Jurisdiction*

Specific jurisdiction "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 564 U.S. at 919 (internal quotation marks omitted). "To establish [specific] personal jurisdiction . . . [a] plaintiff[] must (1) plead facts sufficient to show that jurisdiction is appropriate under the District of Columbia's long-arm statute and (2) satisfy the 'minimum contacts' demands of constitutional due process." *Fuentes–Fernandez & Co. v. Caballero & Castellanos, PL*, 770 F. Supp. 2d 277, 281 (D.D.C. 2011) (quoting *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995)). Because D.C.'s long-arm statute extends as far as the Due Process Clause allows, the "statutory and constitutional jurisdictional questions . . . merge into a single inquiry: would exercising personal jurisdiction accord with the demands of due process?" *Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1189 (D.C. Cir. 2013) (internal quotation marks omitted). "[A] court's exercise of personal jurisdiction over a defendant satisfies due process if there are 'minimum contacts' between the defendant and the forum such that the defendant 'should reasonably anticipate being haled into court there.'" *Urquhart-Bradley v. Mobley*, 964 F.3d 36, 44 (D.C. Cir. 2020) (quoting *Thompson Hine*, 734 F.3d at 1189) (alterations omitted)). "That is, there must exist 'a relationship among the defendant, the forum, and the litigation' such that 'the defendant's suit-related conduct creates a substantial connection with the forum.'" *Id.* (alterations omitted) (quoting *Shatsky v. Palestine Liberation Org.*, 955 F.3d 1016, 1036 (D.C. Cir. 2020)).

N'Jai also has failed to establish the requisite substantial connection with respect to Long Island University, New York University, and Immediate Credit Recovery to establish specific personal jurisdiction. N'Jai, a resident of Pennsylvania, *see* Am. Compl. at 1, 27, does not dispute that Immediate Credit Recovery's alleged conduct occurred outside of the District, *see*

Rathbun Decl. ¶¶ 10–12, and she further concedes that the "acts and omissions" of both New

York University and Long Island University that are relevant to this action occurred "outside of

DC," Pl.'s Opp'n to Defs.' Mots. at 2.

N'Jai contends that this Court may nevertheless exercise jurisdiction over New York

University, Long Island University, and Immediate Credit Recovery because they "have . . . a

contractual relationship" with the Department of Education regarding N'Jai's student loans.  *See*

Pl.'s Br. in Opp'n to Defs.' Mots. at 4–5, 7.  But such "contacts" with the "District of Columbia

flow from [the defendants'] participation in federal financial aid programs through [the

Department of Education] under Title IV of the Higher Education Act of 1965."  *Morgan v.*

*Richmond Sch. of Health & Tech., Inc*., 857 F. Supp. 2d 104, 107–08 (D.D.C. 2012); *see*

*generally* 20 U.S.C. § 1001, *et seq*.  This type of relationship is "legally insufficient to establish

personal jurisdiction under the government contacts exception[.]" *Morgan*, 857 F. Supp. 2d. at

108.

The "government contacts exception" excludes personal jurisdiction over non-residents

when the conduct in question "involves uniquely governmental activities."  *Siam Kraft Paper*

*Co. v. Parsons & Whittemore, Inc*., 400 F. Supp. 810, 812 (D.D.C. 1975); *see Naartex*

*Consulting Corp. v. Watt*, 722 F.2d 779, 786–87 (D.C. Cir. 1983).  The exception is based on

"the unique character of the District as the seat of national government and in the correlative

need for unfettered access to federal departments and agencies for the entire national citizenry."

*Morgan*, 857 F. Supp. 2d at 108 (quoting *Env't Rsch. Int'l, Inc. v. Lockwood Greene Eng'rs,*

*Inc*., 355 A.2d 808, 813 (D.C. 1976) (en banc)).  To permit exercise of personal jurisdiction in

circumstances where a defendant's activity arises solely from its dealings with a "federal

instrumentality not only would pose a threat to free public participation in government, but also

would threaten to convert the District of Columbia into a national judicial forum." *Id.* (quoting *Env't Rsch. Int'l*, 355 A.2d at 813).  Accordingly, this exception precludes the defendants' "contact with the Department of Education from establishing personal jurisdiction in this case." *Stevens v. Del. State Univ.*, 70 F. Supp. 3d 562, 565 (D.D.C. 2014); *Morgan*, 857 F. Supp. 2d at 106.

Recognizing this problem, N'Jai contends that the "fraud exception" to the government contacts exception applies.  Pl.'s Surreply at 15–17, Dkt. 69.  While it is true that an individual "who uses the government as an instrumentality of fraud and thereby causes unwarranted government action against another, forfeits the protection of the government contacts exception," *Morgan*, 857 F. Supp. 2d at 109 (internal quotation marks and alteration omitted), this narrow fraud exception is applied sparingly, *id.*  The fraud exception is only applicable when the heightened pleading requirements for alleging fraud are fulfilled.  *Robo–Team NA, Inc. v. Endeavor Robotics*, 313 F. Supp. 3d 19, 26 (D.D.C. 2018) (citing *Companhia Brasileira Carbureto De Calcio v. Applied Indus. Materials Corp.*, 35 A.3d 1127, 1135 (D.C. 2012)).

Federal Rule of Civil Procedure 9(b) requires a plaintiff alleging fraud to "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  Interpreting this mandate in combination with Rule 8(a), the D.C. Circuit has explained that plaintiffs must "state the time, place[,] and content of the false misrepresentations, the fact misrepresented[,] and what was retained or given up as a consequence of the fraud," as well as the "identi[ty] [of the] individuals allegedly involved in the fraud."  *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (internal quotation marks omitted).  "A claim alleging conspiracy to commit fraud—no less than a claim alleging fraud alone—implicates the

heightened pleading standards of Rule 9(b)." *Arora v. Buckhead Fam. Dentistry, Inc.*, 285 F. Supp. 3d 190, 198 (D.D.C. 2018).

Here, N'Jai's allegations of fraud are predicated on a wide-ranging conspiracy between all of the defendants, as well as various non-defendants, including: "Chemical Bank/JP Morgan Chase Bank," and other unnamed "federal and state agents." *See generally* Am. Compl. at 21–26; Pl.'s Br. in Opp'n to Defs.' Mots. at 13–14, 20, 23–25, 32. N'Jai believes that this conspiracy began in 1993 when Gregory Kaplan, a JP Morgan bank analyst, forged her signature to "falsely certify" five "promissory note-loans" in her name without her consent. Am. Compl. at 7, 27, 38, 48. At some point thereafter, N'Jai "believes that both NYU and LIU" also forged her signature to accumulate additional debt in her name, *see id.* at 12, and that they "had to" have falsely certified her eligibility for loans, signed more clandestine promissory notes, and actively participated in "identify theft, along with DOE, Chase, and [New York Higher Education Services]." *Id.* at 24–25; Pl.'s Br. in Opp'n to Defs.' Mots. at 20–21. As evidence of this conspiracy, N'Jai points to how "banks, schools, [New York Higher Education Services], [and] the US Department of Education" have failed to produce copies of these purportedly fraudulent promissory notes. *See* Am. Compl. at 24; *see also* Pl.'s Br. in Opp'n to Defs.' Mots. at 27. She also references a litany of documents, *see, e.g.*, Am. Compl. at 14–16; Pl.'s Br. in Opp'n to Defs.' Mots. at 2 n.1, 11, 14, 22, attached to her original and amended complaints, Dkts. 1-1 ("Compl. Exs."), 21 ("Am. Compl. Exs."), which detail her attempts to have this debt discharged or reviewed by the Department.

Although N'Jai's "allegations are lengthy, they are not specific." *Saunders v. Davis*, No. 15-cv-2026, 2016 WL 4921418, at *12 (D.D.C. Sept. 15, 2016). N'Jai "offers no details" as to how these alleged co-conspirators "joined in the alleged conspiracy." *Ambellu v. Re'ese Adbarat*

*Debre Selam Kidist Mariam*, 387 F. Supp. 3d 71, 84 (D.D.C. 2019).  She does not specify when

or how New York University and Long Island University's alleged forgeries occurred.  *See id.*

And she fails to identify Immediate Credit Recovery's involvement in this alleged scheme with

any degree of particularity.  *See Arora*, 285 F. Supp. 3d at 198.  Because N'Jai has not provided

"the 'who,' 'what,' 'when,' and 'where' with respect to the circumstances of the fraud," *United*

*States v. Comstor Corp.*, 308 F. Supp. 3d 56, 68 (D.D.C. 2018), she has not satisfied Rule 9(b)'s

pleading requirements, and the fraud exception to the government contacts exception therefore

does not apply.

The Court has neither general nor specific jurisdiction over New York University, Long

Island University, or Immediate Credit Recovery.  *See Robo–Team NA, Inc.*, 313 F. Supp. 3d at

26.  Thus, the Court will dismiss all claims against them pursuant to Rule 12(b)(2).

### C.      Claims against the Department and the Secretary

That leaves the various claims that N'Jai purports to assert against the Department and

the Secretary in Counts II through VIII of her amended complaint.  These claims also fail

because the Court lacks jurisdiction over most, and N'Jai fails to state a claim as to those that

remain.

#### 1.      *Criminal Statutes*

In Counts II and IV, N'Jai purports to bring claims against the Department and the

Secretary for alleged violations of 18 U.S.C. §§ 242, 245, and 1028.  But these criminal statutes

do not provide N'Jai a private right of action.  *See Rockefeller v. U.S. Court of Appeals Off., for*

*Tenth Circuit Judges*, 248 F. Supp. 2d 17, 23 (D.D.C. 2003) (holding that § 242 provides no

private right of action); *Miller v. Marriott Int'l LLC*, 378 F. Supp. 3d 1, 5 n.2, 9 (D.D.C. 2019)

(holding the same for § 245), *aff'd*, 2019 WL 6492628 (D.C. Cir. Nov. 15, 2019); *Saunders*,

2016 WL 4921418, at *13 (holding the same for § 1028). Accordingly, "these claims must be dismissed for lack of subject matter jurisdiction since the United States has not waived its sovereign immunity." *Boling v. U.S. Parole Comm'n*, 290 F. Supp. 3d 37, 47 (D.D.C. 2017), *aff'd*, 2018 WL 6721354 (D.C. Cir. Dec. 19, 2018).[5]

> 2.   *§ 1983 Claims*

In Count IV, N'Jai asserts claims against both the Department and the Secretary pursuant to 42 U.S.C. § 1983. These claims must also fail. As a federal agency, the Department enjoys sovereign immunity from suit under § 1983. *Settles*, 429 F.3d at 1105. And an official capacity claim against the Secretary is merely "another way of pleading an action against an entity of which the officer is an agent."[6] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978). The Court will therefore also dismiss this claim pursuant to Rule 12(b)(1).

---

[5] N'Jai's amended complaint appears to assert the § 242 claim against then-Secretary DeVos in both her individual and official capacities. *See* Am. Compl. at 32. To the extent that N'Jai asserts this claim against DeVos in her individual capacity, it must be dismissed pursuant to Rule 12(b)(6). *See Rockefeller*, 248 F. Supp. 2d at 23.

[6] N'Jai suggests that she may also be asserting a claim against Betsy DeVos in her individual capacity under *Bivens v. Six Unknown Fed. Narcotics*, 403 U.S. 388 (1971), which recognizes an implied cause of action for damages against federal officers alleged to have violated certain constitutional rights. *See* Am. Compl. at 35 (asserting this claim against DeVos in "whatever capacity allowed"); *id.* (citing *Bivens* as "[p]ossibly" being the basis for a claim against the Secretary). But "[b]ecause vicarious liability is inapplicable to *Bivens* . . . , a plaintiff must plead that each Government-official defendant, through the official's own *individual* actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676 (emphasis added). N'Jai has not done that here, as she has failed to include any allegations of individual action taken by DeVos. *See generally* Am. Compl. Instead, she relies on "nothing more than a theory of *respondeat superior*," based on DeVos's then-position as a high-ranking agency official, "which of course cannot be used in a *Bivens* action." *Cameron v. Thornburgh*, 983 F.2d 253, 258 (D.C. Cir. 1993) (citing *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Accordingly, to the extent that N'Jai asserts a *Bivens* claim against DeVos in her individual capacity, it must be dismissed pursuant to Rule 12(b)(6).

3.      *Federal Tort Claims Act*

In Count VII, N'Jai asserts FTCA claims against the Department for negligence and

"[p]ersonal [i]njury."  Am. Compl. at 59.  The FTCA extends a limited waiver of sovereign

immunity, providing a remedy against the federal government for certain torts committed by

federal employees in the scope of their employment.  *See* 28 U.S.C. §§ 1346(b), 2680 (listing

exceptions); *Sloan v. U.S. Dep't of Housing & Urb. Dev.*, 236 F.3d 756, 759 (D.C. Cir. 2001).

"The United States of America is the only proper defendant in a suit under the FTCA."

*Chandler v. Fed. Bureau of Prisons*, 226 F. Supp. 3d 1, 6 n.3 (D.D.C. 2016); *see Coulibaly v.*

*Kerry*, 213 F. Supp. 3d 93, 125 (D.D.C. 2016) ("[A] plaintiff may not bring tort claims against

federal officials in their official capacities or against federal agencies; the proper defendant is the

United States itself[.]"); *see also* 28 U.S.C. § 2679(a).  N'Jai's failure to name the United States

as the defendant ordinarily would call for dismissal of this claim for lack of subject-matter

jurisdiction.  *Espinosa v. FCC Coleman (Medium)*, No. 19-cv-3594, 2020 WL 2126680, at *2

(D.D.C. May 5, 2020).  But, mindful of its obligation to construe N'Jai's pro se complaint

liberally, the Court "declines to dismiss the complaint because of this pleading defect alone."  *Id.*

Even so, this claim must fail as N'Jai has not exhausted her administrative remedies.  The

FTCA "provides that an 'action shall not be instituted upon a claim against the United States for

money damages' unless the claimant has first exhausted his administrative remedies."  *McNeil*,

508 U.S. at 107 (quoting 28 U.S.C. § 2675(a)).  This exhaustion requirement is jurisdictional.

*GAF Corp. v. United States*, 818 F.2d 901, 904 (D.C. Cir. 1987).  To satisfy it, a plaintiff must

have presented the agency with "(1) a written statement sufficiently describing the injury to

enable the agency to begin its own investigation, and (2) a sum-certain damages claim," *id.* at

905, and the agency must have either denied the claim in writing or failed to provide a final

disposition within six months of the filing of the claim, *id.* at 905–06.  "Pursuant to the [Department's] regulations, an administrative claim shall be deemed to have been presented when the [Claims Officer] receives . . . an executed Standard Form [SF] 95 or other written notification of an incident accompanied by a claim for money damages in a sum certain[.]" *Baptichon v. Dep't of Educ.*, No. 20-cv-2400, 2020 WL 6565126, at *3 (E.D.N.Y. Nov. 9, 2020) (quoting 34 C.F.R. § 35.2(a)).

Tracey Sasser, the Department's Claims Officer, attests that the Department has "no record of any FTCA claim properly filed" by N'Jai, Decl. of Tracey Sasser ¶¶ 2, 4, Dkt. 70-1, and N'Jai does not allege that she has submitted a Standard Form SF-95 for her claims pursuant to the Department's regulations.  However, she asserts that she has "exhausted each and every administrative remedy available and known to her," Pl.'s Opp'n to the Department of Education's Motion to Dismiss ("Pl.'s Opp'n to Dep't Mot.") at 5, Dkt. 76, and that she has requested hearings from the Department "multiple times," *id.* at 3.  N'Jai has also submitted an array of exhibits that indicate she has engaged in extensive correspondence with the Department, *see, e.g.*, Appendix of Exhibits ("Appendix") at 114, Dkt. 21, and has submitted multiple loan discharge applications, *see, e.g.*, Compl. Ex. 5P, Dkt. 1-1; Appendix at 111–13.

But neither N'Jai's letters to the Department nor her loan discharge applications have adequately presented the tort claims that she purports to assert pursuant to the FTCA.  "While individuals may submit administrative grievances through means other than a Form SF–95," *Liriano v. ICE/DHS*, 827 F. Supp. 2d 264, 269 n.3 (S.D.N.Y. 2011), such a submission still must provide notice to a federal agency of the claimant's tort claims and include a sum-certain amount for damages, *Stokes v. U.S. Postal Serv.*, 937 F. Supp. 11, 15 (D.D.C. 1996).  N'Jai's submissions failed to provided notice to the Department, as they do not refer to either of the tort

17

claims that she asserts in this action.  Indeed, the applications and other correspondence that she submitted to the Department are largely "couched" in terms of her objections to the Department garnishing her wages and offsetting her tax refunds and other federal payments, rather than as claims being brought under the FTCA.  *See id.* (internal quotation marks omitted); *see also Berdeaux v. U.S. Dep't of Educ. Loan Discharge Unit, San Francisco CA*, No. 10-cv-1737, 2011 WL 3876001, at *5 (D. Ariz. Sept. 2, 2011) (finding plaintiff had not exhausted claims under FTCA through loan discharge application that did not set forth the plaintiff's tort claims); *see also, e.g.*, Appendix at 114, 122–26 (summarizing N'Jai's objections to garnishment and the offset of federal payments).  Moreover, N'Jai's submissions failed to provide a sum-certain amount for damages.  While they do refer to various amounts of debt that N'Jai believes should be discharged, *see, e.g.*, Appendix at 104 (asserting that the Department has failed to properly credit somewhere between $12,000 to $13,000 in payments that N'Jai has made), N'Jai does not "imply that she wished to claim this amount as part or all of her damages" for either of the tort claims that she now intends to assert pursuant to the FTCA, *Stokes*, 937 F. Supp. at 15.

Because N'Jai has failed to satisfy the FTCA's jurisdictional requirements, the Court must dismiss these claims pursuant to Rule 12(b)(1).[7]

### 4.     *Fair Debt Collection Practices Act*

Turning to Count III, the nature of N'Jai's claim is, at first glance, somewhat ambiguous. The heading for this count is labeled "Fair Credit Reporting Act," Am. Compl. at 28, but refers to various provisions of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, *see* Am. Compl. at 28.  Notwithstanding this discrepancy, N'Jai's allegations in support of this claim

---

[7] Though Spadoni has not yet been properly served, *see infra* Part III.D, the Court will dismiss the FTCA claims against her too, *see* 28 U.S.C. § 1915(e)(2)(B)(iii); Fed. R. Civ. P. 12(h)(3), because such claims may only be raised against the United States, *see Coulibaly*, 213 F. Supp. 3d at 125.

largely appear to be referring to the Fair Debt Collection Practices Act's substantive requirements, *see, e.g.*, Am. Compl. ¶¶ 61–65, 74–76 (alleging that the Department committed multiple violations of 15 U.S.C. § 1692e). Mindful that "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson*, 551 U.S. at 94 (internal quotation marks omitted), the Court will liberally construe this count as asserting a Fair Debt Collection Practices Act claim against the Department, *see Washington*, 675 F. Supp. 2d at 31.

Nevertheless, this claim must fail. "Congress did not waive sovereign immunity by enacting" the Fair Debt Collection Practices Act. *Allen v. U.S. Dep't of Educ.*, 755 F. Supp. 2d 122, 124 (D.D.C. 2010); *see Ha v. US. Dep't of Educ.*, 680 F. Supp. 2d 45, 47 (D.D.C. 2010) (concluding the Fair Debt Collection Practices Act does not "contain an unequivocal or express waiver of sovereign immunity as to [the Department's] efforts to collect on a debt"). Accordingly, the Court lacks jurisdiction over this claim, and it will be dismissed pursuant to Rule 12(b)(1).

To the extent that N'Jai does assert claims against the Department under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, *see* Am. Compl. ¶ 66 (citing multiple provisions of the Fair Credit Reporting Act), those claims are also subject to dismissal. N'Jai appears to allege that the Department committed multiple violations of Section 623(a) of the Fair Credit Reporting Act by providing false information about N'Jai to "the Treasury, IRS, [c]redit [r]eporting agencies, and collection agencies [the Department] hired."[8] Am. Compl. ¶¶ 66–67. Section

---

[8] N'Jai also briefly references 15 U.S.C § 1681m(f) in Count III of her complaint. *See* Am. Compl. ¶ 66 (referring to "Section 615(f)" of the Fair Credit Reporting Act). But while the Fair Credit Reporting Act generally provides a cause of action against any "person" who negligently or willfully violates the Fair Credit Reporting Act, *see* 15 U.S.C. §§ 1681n, 1681o, it does not

623(a) "requires furnishers of information to provide accurate information to consumer reporting agencies and to correct and update that information." *Ihebereme v. Cap. One, N.A.*, 933 F. Supp. 2d 86, 110 (D.D.C. 2013) (internal quotation marks omitted), *aff'd*, 573 F. App'x 2 (D.C. Cir. 2014). But § 623(a) is "enforced exclusively as provided under section 1681s [Section 621] by the Federal agencies and officials and the State officials identified in section 1681s." 15 U.S.C. § 1681s-2(d). Thus, "there is no private right of action under Section 623(a), meaning an individual cannot sue to enforce that provision." *Ihebereme*, 933 F. Supp. 2d at 110–11. Consequently, the Court also lacks jurisdiction over any purported claims against the Department under Section 623(a) because it does not provide "a statutory cause of action through which Congress has waived sovereign immunity." *Roseberry-Andrews v. Wynne*, 503 F. Supp. 2d 339, 341 (D.D.C. 2007) (quoting *J.B. Floyd v. District of Columbia*, 129 F.3d 152, 155–56 (D.C. Cir. 1997); *see also Boling*, 290 F. Supp. 3d at 47.

5.    *False Claims Act*

In Count VIII, N'Jai purports to advance a claim under the False Claims Act. Am. Compl. at 63. "The FCA is an anti-fraud statute that prohibits the knowing submission of false or fraudulent claims to the federal government." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 640 (6th Cir. 2003) (citation omitted). It authorizes a private individual,

---

provide a cause of action for violations of § 1681m, *see id.* § 1681m(h)(8) ("Sections 1681n and 1681o of this title shall not apply to any failure by any person to comply with this section."); *see also Perry v. First Nat'l Bank*, 459 F.3d 816, 823 (7th Cir. 2006) ("The unambiguous language of § 1681m(h)(8) demonstrates that Congress intended to preempt private causes of action to enforce § 1681m."); *Thomas v. BrandAuto Fin.*, No. 18-cv-252, 2019 WL 1769152, at *4 (E.D. Tenn. Apr. 22, 2019) ("[V]irtually every federal district court, and the only court[] of appeals to address the issue, have concluded that § 1681m(h)(8)'s language to be clear and unambiguous in precluding a private right of action for violations of § 1681m in its entirety."). Consequently, the Court also lacks jurisdiction insofar as N'Jai asserts a claim against the Department for violations of 15 U.S.C § 1681m(f).

as a relator, "to bring [a *qui tam*] action in the Government's name, and to recover a portion of the proceeds of the action, subject to the requirements of the statute." *United States ex rel. Batiste v. SLM Corp.*, 659 F.3d 1204, 1206 (D.C. Cir. 2011) (citations omitted); *see* 31 U.S.C. § 3730. While "a *qui tam* relator has an interest in the action, the real party in interest in such a case is the United States, regardless of whether the government chooses to intervene." *Walker v. Nationstar Mortg. LLC*, 142 F. Supp. 3d 63, 65 (D.D.C. 2015).

Accordingly, "pro se parties may not pursue [*qui tam*] actions on behalf of the United States." *Id.*; *see Canen v. Wells Fargo Bank, N.A.*, 118 F. Supp. 3d 164, 170 (D.D.C. 2015) ("[C]ourts in this jurisdiction consistently have held that pro se plaintiffs . . . are not adequately able to represent the interests of the United States."). The Court will therefore dismiss this claim without prejudice. *See Walker*, 142 F. Supp. 3d at 66.[9]

6.   *Borrower Defense to Repayment*

In Count V, N'Jai purports to assert a "Borrower Defense to Repayment" claim, Am. Compl. at 44, in which she appears to allege that, pursuant to 34 C.F.R. § 685.206, she is entitled to a discharge of her student loans, Am. Compl. at 44–52.

34 C.F.R. §§ 685.206(c) and 685.222 provide an avenue for borrowers who took out student loans directly from the Department to obtain a discharge of their student loans if the school they attended engaged in misconduct. For loans disbursed prior to July 1, 2017, a

---

[9] N'Jai's amended complaint suggests that Count VIII is also being brought pursuant to 40 U.S.C. § 123, but there is no reference to this statute aside from the heading for this count. *See generally* Am. Compl. at 63–77. Regardless, "40 U.S.C. § 123[] provides the federal government with certain remedies when a person, under certain circumstances, fraudulently obtains a federal benefit." *Knox v. Allstate Prop. & Cas. Co.*, No. 20-cv-00155, 2020 WL 2319696, at *2 (D. Me. May 11, 2020). What it does not do is provide N'Jai with a private right of action, *see* 40 U.S.C. § 123, and therefore, to the extent N'Jai asserts a claim under this statute, it is dismissed.

borrower is eligible for such a discharge if "any act or omission of the school attended by the student that relates to the making of the loan for enrollment at the school or the provision of education services for which the loan was provided would give rise to a cause of action against the school under applicable State law."  34 C.F.R. § 685.206(c)(1); *see also* Am. Compl. ¶ 50 (alleging N'Jai's last student loan was disbursed in 1988).

But these regulations do not provide N'Jai with a cause of action.  *See Carr v. DeVos*, 369 F. Supp. 3d 554, 563–64 (S.D.N.Y. 2019).  Rather, borrower defense claims "must be asserted, and will be resolved, under the procedures in § 685.222(e) to (k)," 34 C.F.R. § 685.206(c)(2), which requires, among other things, a borrower to "[s]ubmit an application to the Secretary," *id.* § 685.222(e)(1)(i), who then "designates a Department official" to review the application and resolve the claim in a written decision, *id.* § 685.222(e)(3)–(5).

In her opposition to the Department's motion to dismiss, N'Jai appears to suggest that her "Borrower Defense to Repayment" claim is being brought under the APA.  *See* Pl.'s Opp'n to Dep't Mot. at 22, 28.  But the APA only permits judicial review of "final agency action," *see* 5 U.S.C. § 704, and N'Jai concedes that she never applied for a borrower defense discharge,[10] *id.* at 21–22; *see also* Dep't Mot. to Dismiss at 7.  She has therefore failed to allege that the Department has made a final decision as to whether she is entitled to a borrower defense discharge, 34 C.F.R. § 685.222(e)(3)–(5), or that the Department has "unlawfully withheld or unreasonably delayed" such a decision, 5 U.S.C. § 706(1).  Thus, to the extent N'Jai purports to advance this claim under the APA, the Court will dismiss it without prejudice pursuant to Rule 12(b)(6).  *See Elk Run Coal Co. v. U.S. Dep't of Lab.*, 804 F. Supp. 2d 8, 31 (D.D.C. 2011).

---

[10] N'Jai asserts that the Department "ha[s] a responsibility to inform" her of the availability of the borrower defense, and that because it failed to do so, she "knew nothing about" it, and therefore could not assert it.  Pl.'s Opp'n to Dep't Mot. at 21–22.

7.    *APA Claim*

In Count VI, N'Jai advances an APA claim to "compel the Department to stop all collections" or "garnishments" with respect to the loans that she alleges are fraudulent.  *See* Am. Compl. ¶ 152.  However, the Court agrees with the Department that N'Jai has not clearly identified what final agency action she seeks to challenge.[11]  *See generally* Am. Compl. at 53–59.  Because N'Jai has again failed to identify "any discrete, final agency action[]" for this Court to review, *Elk Run Coal Co.*, 804 F. Supp. 2d at 31; *see also Vetcher v. Sessions*, 316 F. Supp. 3d 70, 78–79 (D.D.C. 2018), this claim will be dismissed without prejudice pursuant to Rule 12(b)(6).

## D.    Remaining Defendants

That leaves three defendants—Diane Spadoni, Campus Products, and Conduent Education Services—who have yet to appear in this action.  N'Jai now requests an entry of default from the Clerk of Court as to Campus Products, Dkt. 90, and Spadoni, Dkt. 91.[12]

This Court has previously recounted in detail the recurring issues with effecting service in this case.  *See generally* Order of Nov. 20, 2020, Dkt. 86.  In short, there is no indication that

---

[11] N'Jai has filed many exhibits in this action that relate to various agency actions, *see, e.g.*, Compl. Ex. 5-O (formal wage garnishment hearing decision, issued on November 7, 2016); Am. Compl. Exs. at 122–26 (formal wage garnishment hearing decision, issued on September 30, 2019), and she alleges throughout her complaint that she has repeatedly requested various agency actions but has received no response, *see* Am. Compl. at 8, 10, 30, 39, 51, 69; *see also* Am. Compl. Exs. at 111–13 (request for hearing).  The Court has construed N'Jai's pro se complaint liberally and has held her to less stringent standards than pleadings drafted by lawyers, but the Court declines to "parse every possible claim advanced" in exhibits where N'Jai has enumerated certain APA claims in her complaint, and it is otherwise "difficult to comprehend."  *See Canen*, 118 F. Supp. 3d at 166.

[12] N'Jai also requested an entry of default as to New York Higher Education Services, *see* Dkt. 89, before they appeared in this action.  As explained *supra* Part III.A, "the Eleventh Amendment provides [New York Higher Education Services] with immunity from orders issued by a federal court."  *Kozaczek*, 2011 WL 3687379, at *4.

Spadoni has ever been properly served.  *See, e.g.*, Minute Order of Aug. 24, 2020 (directing

N'Jai to provide an accurate address for Spadoni after the U.S. Marshals Service was unable to

effect service on Spadoni at the address that N'Jai provided); Dkt. 84 (documenting three

unsuccessful attempts to effect service at an updated address); Order of Nov. 20, 2020 at 4

(ordering the reissuance of summonses for Spadoni, and directing that this summons be served in

compliance with the requirements of Rule 4(i) of the Federal Rules of Civil Procedure).  With

respect to Campus Products, N'Jai previously asserted that they had waived service, Dkt. 47, but

the Court found that there was insufficient evidence that service had been effectively waived and

ordered the Clerk of Court to issue new summonses.  *See* Minute Order of July 21, 2020.  The

Clerk of Court did so on August 6, 2020, *see* Dkt. 73, but there is no indication that service of

this summons has been effected.[13]  No active summons appear to have been issued specifically

for Conduent Education Services, but N'Jai suggests in her amended complaint that they are the

same entity as Campus Products.  *See* Am. Compl. at 5.

Because service has not been proven as to these defendants, N'Jai's request for the entry

of default is premature at this time.  *See* Fed. R. Civ. P. 55; *Brown v. Wachovia Bank*, 244 F.R.D.

16, 20 (D.D.C. 2007) (citing *Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980)); *see also*

Minute Order of May 19, 2020 (explaining that the Court would "not entertain a motion for

default judgment unless the plaintiff has proven service").  To be sure, N'Jai is proceeding in

forma pauperis, *see* Dkts. 2, 9, so Court officers are responsible for effecting service of process,

---

[13] Service against the defendants in this case has been delayed in part because the U.S. Marshals Service, which is responsible for effecting service on behalf of plaintiffs like N'Jai who are proceeding in forma pauperis, was unable to effect service for a period of time due to the COVID-19 pandemic.  *See* Standing Order In re: Suspension of Process Service by U.S. Marshals Service in District of Columbia Due to Exigent Circumstances Created by the COVID-19 Pandemic, No. 20-18 (D.D.C. Mar. 31, 2020); *see also* Minute Order of June 1, 2020.

*see* 28 U.S.C. § 1915(d).  Generally, pro se plaintiffs like N'Jai who depend on Court officers should not be penalized for those officers' failure to effect service of process.  *Ray v. Experian, Inc.*, No. 08-cv-114, 2009 WL 1255114, at *1 (D.D.C. Apr. 28, 2009); *see also Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1060 (D.C. Cir. 1988) (MacKinnon, J., concurring).  But even with respect to pro se plaintiffs proceeding in forma pauperis, "a district court has no duty to assist a plaintiff in locating a defendant's address for the purpose of service of process."  *Fletcher v. Reilly*, No. 07-cv-331, 2007 WL 2111030, at *1 (D.D.C. July 23, 2007); *see also Rochon v. Dawson*, 828 F.2d 1107, 1110 (5th Cir. 1987).  The Court will grant N'Jai one final opportunity to provide Court officers the information they need to properly effect service.

As to defendant Spadoni, N'Jai initially listed her address as a post office box in Greenville, Texas associated with the Department, Am. Compl. at 5, but later listed the Department's official address as an accurate address for Spadoni,[14] *see* Dkt. 81.  Because N'Jai has sued Spadoni in both her individual and official capacities, *see, e.g.*, Am. Compl. at 28, 35, personal service is required by Rule 4(i)(3) of the Federal Rules of Civil Procedure, *Wilson v. U.S. Park Police*, 300 F.R.D. 606, 608 (D.D.C. 2014).  Accordingly, the Court will direct N'Jai to provide an accurate address for Spadoni to be served in her individual capacity, and if N'Jai fails to do so, it will dismiss all individual capacity claims asserted against Spadoni.  *See Chien v. United States*, No. 17-cv-2334, 2019 WL 4602119, at *5 (D.D.C. Sept. 23, 2019) (dismissing individual capacity claims where plaintiff purported to serve defendants by certified mail at the address for an agency and there was "no evidence" that the named defendants were "served in person or at their home or through an authorized agent").

---

[14] The Department has indicated that Spadoni is "a former U.S. Department of Education employee who retired effective January 1, 2010."  Response to Request for Entry of Default as to Diane Spadoni at 2, Dkt. 95.

As to defendant Campus Products, N'Jai provided an address in Dallas, Georgia.  Am. Compl. at 5.  But she also appears to suggest that Campus Products should be served at a Washington, D.C. address listed for Conduent Education Services.  *See id.*  And it is unclear whether Conduent Education Services is even intended to be its own defendant.  *See id.* (suggesting Campus Products and Conduent Education Services are related entities).  The Court will therefore direct N'Jai to clarify whether Conduent Education Services is a defendant in this action, and to confirm the address she has provided for both Campus Products and Conduent Education Services.

Relatedly, N'Jai's amended complaint is inconsistent as to whether "Van Ru Credit Corporation" and "FMS Investment Corporation" are defendants in this action.  *Compare* Am. Compl. at 1 (not listing either entity in the caption of the amended complaint), *with id.* at 6 (listing both as parties); *id.* at 17 (alleging that Count I is being asserted against both Van Ru Credit Corporation and FMS Investment Corporation).  Thus, the Court will also direct N'Jai to clarify whether she intends to assert claims against those entities as part of this action, and if so, to confirm the address that she has provided for each.

## CONCLUSION

For the foregoing reasons, the motions to dismiss filed by Long Island University, New York University, Immediate Credit Recovery, New York Higher Education Services, and the Department are granted.  A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

March 31, 2021

26