**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JACQUELYN N'JAI,<br>*Plaintiff*,<br>v.<br>U.S. DEPARTMENT OF EDUCATION, et al.,<br>*Defendants*. | No. 19-cv-02712 (DLF) |

**MEMORANDUM OPINION**

Jacquelyn N'Jai brings this action against the Department of Education, Long Island University (LIU), New York University (NYU), Immediate Credit Recovery (ICR), and FMS Investment Corporation (FMS), among others. *See* Am. Compl., Dkt. 24. Before the Court is ICR's Motion to Dismiss, Dkt. 60, Plaintiff's Motion for Entry of Default, Dkt. 137, and Motion for Default Judgment, Dkt. 138, and LIU and NYU's Renewed Motion to Dismiss, Dkt. 155. For the following reasons, the Court will grant LIU and NYU's motion to dismiss and deny the plaintiff's motion for entry of default judgment.

## I. BACKGROUND

### A. Legal Background

Jacquelyn N'Jai attended Long Island University from 1986 to 1988, and New York University from 1988 to 1989. Am. Compl. ¶ 1. Like many students, she took out loans to fund her education. *See id*. ¶¶ 1–2. She claims that she paid those loans off. *Id.* Yet the Department of Education continues to seek payment on the student-loan debt in her name. *Id.* ¶¶27–29.

According to N'Jai, the debt stems from identity theft. She claims that the defendants in this action stole her identity, took out student loans in her name, and then garnished her tax refund

and social security checks to collect on those loans. *See id.* ¶¶ 4, 33, 36. Specifically, she alleges that "both NYU and LIU signed her name on loan applications" "without her consent []or knowledge," *id*. ¶ 33, and conspired with the Department of Education to steal her identity, *id*. ¶ 36. The Department then enlisted other entities—including Immediate Credit Recovery and FMS Investment Corporation—to collect the resulting debt from N'Jai by garnishing her tax refund and social security checks. *Id*. ¶¶ 4, 49, 55.

**B. Procedural background**

N'Jai sued several of the parties allegedly involved in this campaign to defraud, including Long Island University (LIU), New York University (NYU), Immediate Credit Recovery, Inc. (ICR), and FMS Investment Corporation (FMS). *See generally* Compl., Dkt. 1. She brought a variety of statutory claims against those defendants in her 79-page amended complaint, which LIU, NYU, and ICR separately moved to dismiss. Mem. Op. at 2, Dkt. 102; Mot. to Dismiss by LIU, NYU, Dkt. 56; Mot. to Dismiss by ICR, Dkt. 60. FMS did not file any motion. *See* Mem. Op. at 1, Dkt. 142.

In 2021, this Court dismissed N'Jai's claims against LIU, NYU, and ICR for lack of personal jurisdiction. *See* Mem. Op. of Mar. 31, 2021, Dkt. 102 (Mar. 31, 2021). As relevant here, the only forum contacts on which N'Jai relied were these defendants' interactions with the U.S. Department of Education in connection with federal student-loan programs. *Id.* at 11. Applying then-governing precedent, the Court held those contacts insufficient to establish specific personal jurisdiction under the "government contacts" exception, which prevented courts from exercising personal jurisdiction based on certain contacts between nonresident defendants and the federal government. *Id.* at 11–14. Separately, the Court dismissed N'Jai's claims against FMS

for the same reasons when N'Jai moved for default judgment against it. *See* Mem. Op. of Sept. 6, 2021 at 5–6, Dkt. 142.

N'Jai appealed. *See* Notice of Appeal, Dkt. 143 (Sep. 20, 2022). On appeal, the D.C. Circuit concluded that the jurisdictional question turned on the scope of the government-contacts exception under District of Columbia law—specifically, whether the exception is limited to activity protected by the First Amendment and, if so, whether the defendants' alleged contacts with the Department fell within that protection. *N'Jai v. U.S. Dep't of Educ.*, 111 F.4th 1288, 1291 (D.C. Cir. 2024). Because District law did not supply a clear answer to the first question, the Circuit certified two questions to the D.C. Court of Appeals: (1) whether the government-contacts exception is limited to First Amendment activity between a defendant and a government entity; and (2) if so, whether the contacts with the Department alleged here fall within that exception. *Id.* at 1293.

The D.C. Court of Appeals answered the first question in the affirmative. It held that the government-contacts exception applies only when "a defendant can establish that relying on the conduct at issue as a basis for personal jurisdiction would violate the First Amendment." *N'Jai v. U.S. Dep't of Educ.*, 342 A.3d 1217, 1222 (D.C. 2025). It declined to answer the second question—whether the Universities' contacts with the Department implicate the First Amendment—because that question presents an issue of federal constitutional law. *Id.*

With that answer in hand, the D.C. Circuit vacated this Court's dismissal and remanded. The Circuit instructed this Court to "consider any remaining federal constitutional objections to personal jurisdiction before addressing, if necessary, the merits." *N'Jai v. U.S. Dep't of Educ.*, No. 22-5243, 2025 WL 2977680, at *1 (D.C. Cir. Oct. 22, 2025); *see also* Mandate, Dkt. 148.

Before the Court is defendant NYU and LIU's renewed motion to dismiss. *See* Renewed Mot. to Dismiss.

## II. LEGAL STANDARD

### A. Personal Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(2), a party may move to dismiss an action when the court lacks personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "On such a motion, the plaintiff bears the burden of 'establishing a factual basis for the exercise of personal jurisdiction' over each defendant." *Triple Up Ltd. v. Youku Tudou Inc.*, 235 F. Supp. 3d 15, 20 (D.D.C. 2017) (quoting *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990)). The plaintiff cannot satisfy that burden through conclusory allegations; she must instead allege specific facts connecting each defendant to the forum. *See Shibeshi v. United States*, 932 F. Supp. 2d 1, 2–3 (D.D.C. 2013).

In resolving a 12(b)(2) motion, the court "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *Triple Up Ltd.*, 235 F. Supp. 3d at 20 (internal quotation marks omitted). "Ultimately, the Court must satisfy itself that it has jurisdiction to hear the suit." *Id.* at 20–21 (internal quotation marks omitted).

### B. Mandate on Remand

The mandate rule defines this Court's task on remand. A district court must "scrupulously" comply with the appellate court's mandate, neither disregarding matters the mandate resolves nor extending its reconsideration beyond the scope of the appellate decision. *See Nat'l Sec. Couns. v. DOJ*, 305 F. Supp. 3d 176, 180 (D.D.C. 2018) (internal quotation marks omitted). The D.C. Circuit directed this Court to consider "any remaining federal constitutional objections to personal jurisdiction before addressing, if necessary, the merits." *N'Jai v. U.S. Dep't of Educ.*, No. 22-

5243, 2025 WL 2977680, at *1 (D.C. Cir. Oct. 22, 2025). The question before the Court is therefore narrow: Has N'Jai alleged facts sufficient to support the exercise of personal jurisdiction when the defendants' contacts with the Department are taken into account? The Court addresses only that question at this stage.

## III. ANALYSIS

### A. Personal Jurisdiction

Long Island University and New York University both contend that this Court lacks personal jurisdiction over them. Renewed Mot. to Dismiss 1. "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). "The District of Columbia's jurisdictional statute generally allows for the exercise of jurisdiction over a defendant for claims arising from the defendant's transacting of business in the District." *N'Jai v. United States Dep't of Educ.*, 111 F.4th 1288, 1289 (D.C. Cir. 2024), *certified question answered*, 342 A.3d 1217 (D.C. 2025).

Within those bounds, the exercise of jurisdiction must also comport with due process. *See Daimler*, 571 U.S. at 125. The Court "may exercise one of two types of personal jurisdiction: (1) 'general or all-purpose jurisdiction' or (2) 'specific or case-linked jurisdiction.'" *Lewis v. Full Sail, LLC*, 266 F. Supp. 3d 320, 323 (D.D.C. 2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

#### *i. General Jurisdiction*

The D.C. Circuit's decision did not disturb this Court's general jurisdiction analysis. In any event, as was true in the Court's previous decision, general jurisdiction is easily dispatched. A court may ordinarily exercise jurisdiction over a corporation only where its affiliations with the forum are "so continuous and systematic as to render it essentially at home." *Daimler*, 571 U.S.

at 127 (citation modified). The "paradigm" forums are the corporation's place of incorporation and principal place of business. *Id.* at 137. Both LIU and NYU are chartered in New York and maintain their principal places of business there. *See* Fevola Aff. ¶¶ 3-4 (Dkt. 56-1) and Ex. A attached thereto (Dkt. 56-2); Han Decl. ¶¶ 3-4 (Dkt. 56-5) and Ex. A attached thereto (Dkt. 56-6). The record suggests that FMS maintains a primary address in Illinois and there is no evidence of it being incorporated in the District of Columbia. *See* Mem. Op. 4–5, Dkt. 142. None is therefore "at home" in the District, and N'Jai identifies no exceptional circumstances that would nevertheless support general jurisdiction here. *See id.* The Court thus lacks general jurisdiction over all defendants.

*ii. Specific Jurisdiction*

Specific jurisdiction "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 564 U.S. at 919 (internal quotation marks omitted). "To establish [specific] personal jurisdiction, [a] plaintiff[] must (1) plead facts sufficient to show that jurisdiction is appropriate under the District of Columbia's long-arm statute and (2) satisfy the 'minimum contacts' demands of constitutional due process." *Fuentes-Fernandez & Co. v. Caballero & Castellanos, PL*, 770 F. Supp. 2d 277, 281 (D.D.C. 2011) (quoting *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995)). Because the District's long-arm statute reaches to the limits permitted by due process, those requirements generally "merge into a single inquiry: would exercising personal jurisdiction accord with the demands of due process?" *Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1189 (D.C. Cir. 2013) (internal quotation marks omitted).

Due process requires "'minimum contacts' between the defendant and the forum such that the defendant 'should reasonably anticipate being haled into court there.'" *Urquhart-Bradley v.*

*Mobley*, 964 F.3d 36, 44 (D.C. Cir. 2020) (quoting *Thompson Hine*, 734 F.3d at 1189). Put differently, there must be "a relationship among the defendant, the forum, and the litigation" in which "the defendant's suit-related conduct creates a substantial connection with the forum.'" *Id.* (citation modified) (quoting *Shatsky v. Palestine Liberation Org.*, 955 F.3d 1016, 1036 (D.C. Cir. 2020)).

N'Jai locates that connection in the defendants' participation in the federal student-loan system. *See* Mem. Op., Dkt. 102 at 11 (citing Pl.'s Br. in Opp'n to Defs.' Mots., Dkt. 64, at 4-5, 7). She alleges that NYU and LIU dealt repeatedly with the Department of Education in administering federal student aid, including by obtaining authorization to participate, processing loan applications, and certifying loans. *Id.* ICR and FMS, she says, likewise established ongoing relationships with the Department, both by securing approval to participate in the program and by contracting to collect delinquent student-loan debt. *See* Pl.'s Br. in Opp'n to Defs.' Mots. at 4–5, 7; *see also* Am. Compl. at 3–4, 17–34. Because the allegedly fraudulent loans underlying this suit were administered and later collected through those relationships, N'Jai maintains that her claims arise from the defendants' contacts with the District.

This Court previously rejected that theory under the government-contacts exception to the District's long-arm statute. *See* Mem. Op., Dkt. 102. That exception—based on the "unique character of the District as the seat of national government"—historically limited the jurisdictional significance of contacts involving the federal government. *Id.* at 11 (quoting *Morgan v. Richmond Sch. of Health & Tech., Inc.*, 857 F. Supp. 2d 104, 108 (D.D.C. 2012)); *see Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 786–87 (D.C. Cir. 1983). On appeal, however, the D.C. Court of Appeals clarified the doctrine's reach: The government-contacts exception applies "only if a defendant can establish that relying on the conduct at issue as a basis for personal jurisdiction

would violate the First Amendment." *N'Jai v. United States Dep't of Educ.*, 342 A.3d 1217, 1222 (D.C. 2025).

NYU and LIU attempt to invoke the government-contacts exception again, characterizing their dealings with the Department as protected petitioning activity. *See* Renewed Mot. to Dismiss 15–16. They emphasize that their participation in the federal-loan program consisted of "applications, certifications, reporting, and compliance," which they contend implicate the First Amendment right to petition. *Id.* at 15. The Court is doubtful. Routine participation in a federal regulatory or benefits program is not obviously petitioning activity, much less activity whose use as a jurisdictional contact would "pose a threat to free public participation in the government." *Envtl. Research Int'l, Inc. v. Lockwood Greene Engineers, Inc.*, 355 A.2d 808, 813 (D.C. App. 1976). But the Court need not resolve that question. Even counting the defendants' contacts with the Department, N'Jai has not established a sufficient connection among the defendants, the District, and the claims asserted here.

Start with the Universities' participation in the federal student-aid system. Section 13-423(a) of the District's long-arm statute permits jurisdiction over a person "as to a claim for relief arising from the person's . . . transacting any business in the District of Columbia." D.C. Code § 13-423(a)(1). And the claim must "aris[e] from" those contacts. *Lex Tex Ltd., Inc. v. Skillman*, 579 A.2d 244, 247 (D.C. 1990). The defendants' dealings with the Department do not supply that connection.

To invoke the "transacting any business" provision of the long-arm statute, "the plaintiff must show that a defendant engaged in *commercial or business-related activity* directed at District residents." *Capel v. Capel*, 272 F. Supp. 3d 33, 39 (D.D.C. 2017) (emphasis in original)) (quoting *Holder v. Haarmann & Reimer Corp.*, 779 A.2d 264, 270–71 (D.C. 2001)). Contacts flowing from

universities' regulatory participation in federal student-aid programs administered by the Department of Education do not usually qualify. *See Stevens v. Del. State Univ.*, 70 F. Supp. 3d 562, 565 (D.D.C. 2014) (where "the only contacts alleged are that the University accepts federal student loan money from a government agency on behalf of its students," "even if the government contact exception did not apply, the contacts at issue would be unlikely to form a basis of personal jurisdiction").

More fundamentally, N'Jai has not shown that her "claim for relief aris[es] from" those alleged contacts. *See* D.C. Code § 13–423(b). Her theory is that NYU and LIU fraudulently obtained loans in her name while she attended college in New York. Nothing alleged suggests that the supposed fraud occurred in the District. Indeed, N'Jai previously acknowledged that the Universities' relevant "acts and omissions" occurred "outside of DC." *See* Mem. Op. at 11, Dkt. 102 (quoting Pl.'s Opp'n to Defs.' Mot. 2, Dkt. 63) Nor does N'Jai allege that she suffered the resulting injury here. During the relevant period, she lived in Pennsylvania or Maryland. *See* Am. Compl. ¶¶ 52–53; Pl.'s Br. in Opp'n to Defs.' Mots. 30, Dkt. 157. The Department's location in the District does not transform allegedly fraudulent transactions undertaken elsewhere into District-based conduct. Thus, even assuming NYU and LIU transacted business in the District through their participation in federal student-aid programs, N'Jai has not shown that her claims "aris[e] from" that business. D.C. Code § 13–423(b).

The alleged debt-collection relationships fare no better. A contractual relationship with an entity in the District does not, "by itself", establish minimum contacts or purposeful availment. *Exponential Biotherapies v Houthoff Buruma*, 638 F. Supp. 2d 1, 7 (D.D.C. 2009) (citing *COMSAT Corp. v. Finshipyards S.A.M.,* 900 F. Supp. 515, 524 (D.D.C.1995)). Rather, courts examine the parties' course of dealing and the circumstances surrounding the agreement, including its

negotiation and execution, to determine whether the defendant deliberately affiliated itself with the forum. *Id.* at 7–8.

Here, the alleged collection activity occurred outside of the District by companies outside of the District. N'Jai does not allege that the defendants negotiated or executed the relevant agreements in the District. And the collection activity that allegedly injured her, such as the garnishment of her tax return, was directed toward where she earns her wages—that is, Maryland. The mere fact that the Department sits in the District therefore does not establish the sort of purposeful, suit-related connection with this forum that due process requires. In short, N'Jai identifies contacts between the defendants and a federal agency headquartered in the District, but she does not connect those contacts to conduct occurring here or to an injury suffered here. That is not enough to establish the requires "relationship among the defendant the forum, and the litigation." *Urquhart-Bradley*, 964 F.3d at 44. The Court therefore lacks personal jurisdiction over the remaining defendants.

Because the Court has neither general nor specific jurisdiction over NYU, LIU, ICR, or FMS, it will dismiss all claims against these defendants pursuant to Rule 12(b)(2).[1]

**B. Default Judgment**

Having vacated the order to dismiss for lack of personal jurisdiction, Dkt. 142, the appellate court remanded to this Court the motion for default judgment upon which that dismissal was made, Dkt. 137. "The party seeking default judgment has the burden of establishing both subject matter jurisdiction over the claim[] and personal jurisdiction over the defendant[]." *Friends of Mayanot Institute, Inc. v. Islamic Republic of Iran*, 313 F.Supp.3d 50, 56 (D.D.C. 2018) (quoting *Thuneibat*

[1] Because personal jurisdiction is lacking, the Court need not reach the defendants' alternative arguments under Rules 12(b)(5) and 12(b)(6). *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

*v. Syrian Arab Republic*, 167 F.Supp.3d 22, 33 (D.D.C. 2016)). As discussed above, N'Jai has not sustained the burden of showing that the Court can exercise personal jurisdiction over FMS. Having found that there is no personal jurisdiction, the court may not assess the merits of the default judgment. *Kaplan v. Central Bank of the Islamic Republic of Iran*, 896 F.3d 501, 510 (D.C. Cir. 2018). Thus, the motion for a default judgment is denied and FMS is dismissed from the case without prejudice.

**CONCLUSION**

For the foregoing reasons, the Court will grant NYU and LIU's renewed motion to dismiss for lack of personal jurisdiction without prejudice, Dkt. 155, deny N'Jai's motion for entry of default judgment against FMS, Dkt. 137, and dismiss ICR and FMS from the case for lack of personal jurisdiction. A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

September 29, 2026